UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ANNABELLE CHARLIER,                                    Civil Action No.


                              Plaintiff,


        -against-                                      **COMPLAINT**


21 ASTOR PLACE CONDOMINIUM,
BOARD OF MANAGERS OF THE 21 ASTOR PLACE CONDOMINIUM,
RESIDENTIAL MANAGEMENT GROUP, LLC
D/B/A DOUGLAS ELLIMAN PROPERTY MANAGEMENT,
WILLIAM RIBBECKE, as President of the Board of Managers
of the 21 Astor Place Condominium,
RICARDO PROVERBS, individually

                                                      Plaintiff Demands a Trial
                                                      By Jury

                              Defendants.
-----------------------------------------------------------------------X

Plaintiff, ANNABELLE CHARLIER, (hereinafter referred to as "Plaintiff" or "CHARLIER"), by and through Plaintiff's attorneys, DEREK SMITH LAW GROUP, PLLC, as and for Plaintiff's Complaint in this action against the Defendants 21 ASTOR PLACE CONDOMINIUM, BOARD OF MANAGERS OF THE 21 ASTOR PLACE CONDOMINIUM, WILLIAM RIBBECKE, as President of the Board of Managers of the 21 Astor Place Condominium (hereinafter collectively referred to as "21 ASTOR PLACE"), RESIDENTIAL MANAGEMENT GROUP, LLC D/B/A DOUGLAS ELLIMAN PROPERTY MANAGEMENT (hereinafter referred to as "DOUGLAS ELLIMAN"), and RICARDO PROVERBS, individually (hereinafter referred to as "PROVERBS") (hereinafter collectively referred to as "Defendants"), respectfully alleges as follows upon information and belief:

**NATURE OF THE CLAIMS**

1. This action is brought to remedy, *inter alia*, Defendants' unlawful discrimination, harassment, and retaliation against Plaintiff CHARLIER with respect to Plaintiff's housing and public accommodations on the basis of Plaintiff's sex and gender, as well as damages for negligence.

2. Through their discriminatory and negligent conduct, Defendants violated, *inter alia*, the federal Fair Housing Act, 42 U.S.C.A. § 3601 et seq., the New York State Human Right Laws, New York Executive Law, § 290 et seq., the New York City Human Rights Law, the Administrative Code of the City of New York 8-107 et seq., the common laws of the State of New York, and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

3. Defendant PROVERBS sexually harassed Plaintiff and in doing so is liable for intentional infliction of emotional distress.

4. Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN were also negligent in the hiring, supervision, and retention of Defendant PROVERBS.

5. As a result of Defendants' violations, Plaintiff seeks declaratory relief with respect to each Claim, as well as, monetary relief, including but not limited to: statutory damages, compensatory damages, punitive damages; attorneys' fees and costs, interest; together with any and all other legal and equitable remedies pursuant to the applicable federal, state and city laws and/or what this Court deems appropriate, as are just and proper to remedy Defendants' unlawful housing and public accommodation discriminatory practices.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action involves federal questions, because the causes of action asserted herein arise in part under federal laws to remedy violations of the laws of the State of New York and City

of New York based upon Federal Questions and the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against, retaliated against, and harassed by Defendants on the basis of Plaintiff's sex and gender.

7. 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

8. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

9. Plaintiff CHARLIER is seeking damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, being discriminated against and harassed by Defendants on the basis of her sex and gender.

10. Plaintiff is also seeking damages for negligence.

11. At all times material, Defendant 21 ASTOR PLACE CONDOMINIUM was and is a condominium located at 21 Astor Place, New York, New York 10003.

12. Plaintiff is an individual female who was and is a resident of 21 ASTOR PLACE CONDOMINIUM.

13. At all times material, Defendant BOARD OF MANAGERS OF THE 21 ASTOR PLACE CONDOMINIUM was and is the Board of Managers for 21 ASTOR PLACE CONDOMINIUM.

14. At all times material, WILLIAM RIBBECKE served and continues to serve as President of the Board of Managers of the 21 Astor Place Condominium. Defendant 21 ASTOR PLACE CONDOMINIUM is an unincorporated association.

15. At all times material, Defendant RESIDENTIAL MANAGEMENT GROUP, LLC D/B/A DOUGLAS ELLIMAN PROPERTY MANAGEMENT ("DOUGLAS ELLIMAN") was and is a foreign limited liability company existing by the virtue and laws of the State of Delaware that does business in the State of New York.

16. Defendant DOUGLAS ELLIMAN provided property management services to Defendants 21 ASTOR PLACE.

17. Defendant PROVERBS is a heterosexual male.

18. At all times material, Defendants DOUGLAS ELLIMAN and 21 ASTOR PLACE employed Defendant PROVERBS as doorman/concierge for their condominium building located at 21 Astor Place, New York, New York 10003.

19. At all times material, Defendant PROVERBS was an employee of Defendants DOUGLAS ELLIMAN and 21 ASTOR PLACE.

20. At all times material, Defendant PROVERBS was an agent of Defendants DOUGLAS ELLIMAN and 21 ASTOR PLACE.

21. Defendants DOUGLAS ELLIMAN and 21 ASTOR PLACE were joint employers and both exerted control over Defendant PROVERBS.

22. At all times material, Defendants DOUGLAS ELLIMAN and 21 ASTOR PLACE acted by and through their employees, agents, and servants who were acting in the scope and course of employment, agency and servitude.

23. At all times material, Defendants DOUGLAS ELLIMAN and 21 ASTOR PLACE met and meet the definition of an "owner," "lessor," "proprietor," and "manager" under all applicable federal, state and local statutes and Defendant PROVERBS was an "agent or employee of" Defendants DOUGLAS ELLIMAN and 21 ASTOR PLACE.

24. Defendants are an "owner, lessee, proprietor, manager, superintendent, agent or employee of

any place of public accommodation" as defined in New York State's Executive Law, Article 15,

§ 296 and New York City Administrative Code Section §8.

25. Defendants DOUGLAS ELLIMAN and 21 ASTOR PLACE are places of public

accommodations and Defendant PROVERBS was their employee.

## STATEMENT OF FACTS

26. Around late April 2021, Plaintiff and her husband moved into Defendant 21 ASTOR PLACE.

27. Around early May 2021, Defendant PROVERBS began to make sexually charged remarks to

Plaintiff as Plaintiff went to exercise at the gym. Between around May 2021 through around

late June 2021, between around three (3) to six (6) times per week, by way of example

Defendant PROVERBS pronounced to Plaintiff: **Damn, you're so fit, you don't need to**

**workout. Look at that body; You're so young and fit.** While making these comments,

Defendant PROVERBS sexually stared at Plaintiff eyeing Plaintiff's body up and down.

28. Additionally, on around one (1) occasion, Defendant PROVERBS asked Plaintiff the exercises

she performs at the gym. In response, Plaintiff mentioned that she does push-ups. PROVERBS

discriminatorily responded, **women don't need to do push-ups.**

29. On around a few occasions, PROVERBS told Plaintiff, **You're so young, you don't need to**

**be married. Simon [Plaintiff's husband] is always working.**

30. Defendants' Building Manager Supervisor, EDWARD HERNANDEZ was often in the lobby

witnessing Defendant PROVERBS make these overt and unlawful sexual comments towards

Plaintiff.

31. Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN had notice that Defendant

PROVERBS sexually harassed Plaintiff. Defendants failed to take appropriate preventive

and/or corrective measures and allowed Defendant PROVERBS to continue to sexually harass

Plaintiff.

32. Over this time period, on numerous occasions, Defendant PROVERBS also forced Plaintiff into unnecessarily long conversations, which made it clear Defendant PROVERBS was interested in Plaintiff beyond the typical tenant and doorman/concierge relationship.

33. Defendants' Building Manager Supervisor, EDWARD HERNANDEZ was often in the lobby witnessing Defendant PROVERBS force Plaintiff into these extremely long conversations.

34. On one (1) of these occasions, around late May 2021, Defendant PROVERBS engaged Plaintiff in a lengthy conversation and discussed that both owned cats. Plaintiff ended the conversation in a non-confrontational, polite way, stating, one day you should see my cat.

35. Later that day, Defendant PROVERBS intrusively went to Plaintiff's apartment and knocked on the door. Plaintiff opened the door and stood there in shock. Defendant PROVERBS remarked, I am here to see your cat. Plaintiff was extremely taken aback and felt obligated to show Defendant PROVERBS her cat. Plaintiff rushed to retrieve her cat to show Defendant PROVERBS at the door and quickly end this uncomfortable interaction.

36. While Plaintiff went to retrieve her cat, Defendant PROVERBS walked into Plaintiff's apartment uninvited and unwelcomed.

37. Defendant PROVERBS proceeded to impose himself and take a tour of all of the rooms in Plaintiff's apartment, including Plaintiff's bedroom. Defendant PROVERBS only briefly glanced at Plaintiff's cat and sat down at Plaintiff's dining room table.

38. Defendant PROVERBS then engaged Plaintiff in conversation for the next around four (4) hours. Throughout this around four (4) hour period, Plaintiff repeatedly told Defendant PROVERBS that she had things to do, as a polite way for Defendant PROVERBS to leave Plaintiff's apartment. However, Defendant PROVERBS continued to force the conversation and would not leave, holding Plaintiff captive in her own apartment. Eventually, Defendant

PROVERBS'S phone rang and he left.

39. Shortly thereafter, from around late May 2021 through around late June 2021, Defendant PROVERBS relentlessly pursued Plaintiff. During this time period, around twelve (12) times per week, Defendant PROVERBS stated to Plaintiff, **when are we hanging out, I want to see you, let's spend time together.**

40. Defendant PROVERBS'S persistent advances made Plaintiff extremely uncomfortable. Each time, Plaintiff made an excuse so Defendant PROVERBS would not come to her apartment, often times telling Defendant PROVERBS that she was busy or had an interview. Defendant PROVERBS frequently responded by pressuring Plaintiff, stating **if you're busy now what about tomorrow?**

41. Around June 16, 2021, pest control arrived at Defendants 21 ASTOR PLACE to conduct a routine visit of Plaintiff's apartment, as well as others in the building. In a situation like this, the doorman/concierge would buzz the tenant to inform them that pest control was onsite. However, on this occasion, Defendant PROVERBS went to Plaintiff's apartment and loudly banged on Plaintiff's door for around five (5) to ten (10) minutes. Defendant PROVERBS never announced himself. At that time, Plaintiff did not know who was knocking so aggressively on her door so Plaintiff did not answer, as Plaintiff was afraid.

42. Around twenty (20) minutes later, Defendant PROVERBS returned to Plaintiff's apartment and again loudly banged on Plaintiff's door for around five (5) to ten (10) minutes. Defendant PROVERBS still did not announce himself. Plaintiff was extremely nervous as she did not know who was menacingly knocking on her door. Thus, Plaintiff did not answer the door and went to a part of her apartment far away from the front door as Plaintiff was in fear.

43. Around an hour or two later, Plaintiff went downstairs and informed Defendant PROVERBS of this frightening event, as Defendant PROVERBS was the doorman/concierge on shift.

Plaintiff then asked Defendant PROVERBS if any strangers had been let into the building and if Defendant PROVERBS knew who had been knocking on her door like that. Defendant PROVERBS terrifyingly responded, **it's me of course, how dare you not open the door**.

44. Around June 29, 2021, Plaintiff had an important virtual final interview that Plaintiff was participating in from her apartment. This virtual final interview was scheduled during Defendant PROVERBS'S shift.

45. Plaintiff wanted to ensure no interruptions during this interview. Thus, Plaintiff informed Defendant PROVERBS of her important final interview and when it was taking place to make sure nobody knocked on Plaintiff's door or buzzed Plaintiff's apartment. Defendant PROVERBS opportunistically stated, **oh does that mean you're no longer busy and you're free afterwards.** Plaintiff was caught off guard and responded, I am done with interviews and I can now finally relax.

46. After Defendant PROVERBS'S shift that same day (June 29, 2021), Defendant PROVERBS knocked on Plaintiff's door. Plaintiff opened the door not knowing who was at her door. Defendant PROVERBS then forcefully pushed the door open and boldly walked in, uninvited and unwelcomed, and remained in Plaintiff's apartment for around the next three (3) to four (4) hours.

47. Defendant PROVERBS proceeded to tour Plaintiff's apartment again, went straight to Plaintiff's bedroom, which is located at the back of Plaintiff's apartment, and commented on the furniture arrangement in Plaintiff's bedroom.

48. Defendant PROVERBS sat down at Plaintiff's dining room table and showed Plaintiff his

Instagram story[1] from a previous night out. Defendant PROVERBS'S Instagram story showed multiple women in revealing attire dancing provocatively. Defendant PROVERBS then asked Plaintiff, **Do you dance like that? Do you like to dance?**

49. Plaintiff was in complete shock.

50. Defendant PROVERBS then asked Plaintiff **to spin around** so he **could have a look at her.** Defendant PROVERBS then commented, **Damn, look at that**, while ogling at Plaintiff buttocks.

51. Plaintiff was extremely caught off guard and afraid, as they were alone in Plaintiff's apartment and no one knew that Defendant PROVERBS was there. Additionally, Plaintiff is a petite woman standing at around five feet three inches tall, while Defendant PROVERBS is an imposing figure around six feet four inches tall.

52. Thus, Plaintiff obliged to Defendant PROVERBS'S request.

53. Plaintiff immediately tried to change topics of conversation and asked Defendant PROVERBS about his experiences growing up in New York City.

54. Defendant PROVERBS told Plaintiff: **I was part of the "Bloods" gang, but unlike my friends, I was not active in the gang because I like pussy too much. All I want to do is fuck so I'm not interested in the game. I prefer bitches.**

55. While at Plaintiff's apartment over the three (3) to four (4) hour period, numerous times Defendant PROVERBS repeatedly commented to Plaintiff about "**pussy**" and "**bitches**" and how he likes to "**fuck.**" By way of example, Defendant PROVERBS incessantly commented: **You know, all I care about is fucking bitches; all I need is to fuck; All I want is pussy;**

---

[1] According to Instagram's website, an Instagram story, "lets you share all the moments of your day [or night]. . . . As you share multiple photos and videos, they appear together in a slideshow format."

**Why would I spend my time on anything else when I can have pussy; I want pussy all day; I want bitches all day.**

56. Plaintiff CHARLIER kept trying to change the topic of conversation as Defendant PROVERBS'S sexually charged remarks made Plaintiff CHARLIER extremely uncomfortable and fearful. However, PROVERBS always reverted the conversation back to comments about "**pussy**", "**bitches**" and/or **sex**.

57. Defendant PROVERBS also threatened Plaintiff not to repeat this, warning Plaintiff, **that snitches always end up in ditches.**

58. Defendant PROVERBS then informed Plaintiff that he has cousins in London who are active gang members and that one of his cousins **chopp[ed] up someone with a katana sword and was not caught by the police.**

59. Defendant PROVERBS again frighteningly told Plaintiff, **snitches always end up in ditches.**

60. Around six (6) times in total, while Defendant PROVERBS was at Plaintiff's apartment, Defendant PROVERBS warned Plaintiff, **snitches always end up in ditches**.

61. Defendant PROVERBS told Plaintiff that when he visited his cousins in London, he was unsure of the intentions of the London women because London women were friendlier than the women in New York City. Defendant PROVERBS then said, **Regardless, I am always ready to fuck.**

62. Plaintiff told Defendant PROVERBS that pure friendliness should not be mistaken for further intentions. Plaintiff then told Defendant PROVERBS to not misinterpret her friendliness and politeness to make it clear to Defendant PROVERBS that she was not romantically interested in him.

63. Plaintiff then told Defendant PROVERBS that my husband reminds me to keep my distance from strangers, as the culture in New York is different from London; Plaintiff is from Europe

and had previously lived in London for around nine (9) years before moving to New York City in around March 2021.

64. Defendant PROVERBS did not acknowledge Plaintiff's comments and brazenly asked Plaintiff if she had any body piercings or tattoos while lasciviously looking Plaintiff up and down and staring at Plaintiff's chest.

65. Defendant PROVERBS noticed a vintage playboy magazine in Plaintiff's living room and asked Plaintiff why she had it.

66. Plaintiff told Defendant PROVERBS that she and her husband collect items from the 1960's and the magazine was a vintage collectible. Defendant PROVERBS responded by telling Plaintiff that he has a number of current Playboy magazines in his personal locker downstairs and that he could give them to her. Plaintiff declined and told Defendant PROVERBS that she has no interest in the pornographic imagery and that she only owned this vintage magazine as a collectible from the 1960's era.

67. Defendant PROVERBS grabbed the magazine and starting viewing it.

68. Defendant PROVERBS thumbed through the Playboy Magazine, page by page, analyzing the physical features and genital parts of the various Playboy models. As Defendant PROVERBS viewed the Playboy magazine, for around one (1) hour, PROVERBS repeatedly commented to Plaintiff about the Playboy models, including but not limited to: **She has fucking good tits—do you think she is arousing?; Are you aroused by this?; Damn, look at that, she is ready to fuck; Do you like that pussy?; She look tight; Do you like big tits?; Wow, look at that, she's ready.**

69. As Defendant PROVERBS was viewing the Playboy magazine, he also incessantly commented to Plaintiff about Plaintiff's vagina for around fifteen (15) minutes, i.e.: **What does your pussy look like?; Do you like to shave yours?; Does it look nice?**

70. Plaintiff was in extreme fear and deeply disturbed by Defendant PROVERBS's sexually deviant behavior.

71. Finally, after between around three (3) to four (4) hours of Defendant PROVERBS'S relentless sexual harassment, Defendant PROVERBS'S cell phone rang and PROVERBS told Plaintiff that he had to leave.

72. When Plaintiff's husband returned home, Plaintiff's husband noticed that Plaintiff was visibly shaken and repeatedly asked Plaintiff what was wrong. Plaintiff was so distraught by the incident that she could not speak about it at that time. Around one (1) day later, Plaintiff mustered the courage to tell her husband about Defendant PROVERBS'S extreme sexual harassment that took place in their own, private home.

73. Plaintiff's husband wanted to immediately escalate the matter, but Plaintiff was terrified since Defendant PROVERBS knew where Plaintiff lived and made numerous threats about his inactive gang affiliation and that **snitches always ending up in ditches no matter what.**

74. Plaintiff was so afraid of Defendant PROVERBS that for the next around seven (7) weeks, Plaintiff would not leave her apartment during Defendant PROVERBS'S shift (Monday through Friday, 7AM to 3PM). Plaintiff feared for her own physical safety. This completely upended Plaintiff's daily life and took a toll on Plaintiff' mental and physical health. On around two (2) occasions, Plaintiff's husband had to escort Plaintiff in and out of the building when it was absolutely necessary for Plaintiff to leave her apartment during Defendant PROVERBS'S shifts.

75. Plaintiff rearranged her entire life to avoid Defendant PROVERBS for around seven (7) weeks. Defendant PROVERBS'S extreme sexual harassment caused Plaintiff to isolate herself, suffer extreme emotional distress, and gain around thirty (30) pounds, as Plaintiff was a prisoner in her own home.

76. Around July 30, 2021, Defendant PROVERBS called Plaintiff regarding a furniture delivery. Defendant PROVERBS flirtatiously and playfully said, **Good Morning Annabelle, How are you Annabelle?** Plaintiff was curt with Defendant PROVERBS and asked Defendant PROVERBS the reason for this call. Defendant PROVERBS aggressively responded, **No, I said good morning Annabelle.** Plaintiff remained curt with Defendant PROVERBS. Defendant PROVERBS angrily told Plaintiff, there is a furniture delivery I am sending the team upstairs. Defendant PROVERBS then abruptly hung up by slamming the phone into the receiver, which Plaintiff heard through her end of the telephone line.

77. Plaintiff could no longer withstand the extreme hostile housing and public accommodations environment living in constant fear and being confined to her apartment.

78. Around August 4, 2021, Plaintiff and her husband complained to Defendant RIBBECKE about Defendant PROVERBS'S sexual harassment.

79. Defendant RIBBECKE took no corrective action and told Plaintiff to speak with Defendants' 21 ASTOR PLACE and DOUGLAS ELLIMAN Property Manager, YOLANDA QUEEN (hereinafter referred to as "QUEEN").

80. Around August 8, 2021, Plaintiff filed a police report since she feared for her safety as Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN were not properly addressing the situation.

81. Around August 8, 2021, Plaintiff and her husband emailed Property Manager QUEEN as they still had not received a response from Defendant RIBBECKE or anyone else. In this email, Plaintiff and her husband detailed Defendant PROVERBS'S extreme sexual harassment, as well as how it caused Plaintiff to suffer depression, post-traumatic stress, nightmares and insomnia.

82. Defendant PROVERBS'S unlawful behavior made Plaintiff fear for her physical safety.

83. Property Manager QUEEN also failed to take swift and necessary corrective action allowing PROVERBS to remain working for Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN.

84. Around August 11, 2021, Plaintiff and her husband again complained to Defendant RIBBECKE who failed to take appropriate corrective action.

85. Around one (1) week later, Plaintiff was out of options and retained legal counsel, at which point Defendants finally suspended Defendant PROVERBS pending an investigation.

86. While Defendants investigated the matter, around late August 2021, a person in the building terrorized Plaintiff by posting a handwritten note and drawing to Plaintiff's apartment door that portrayed a dog crying that stated, "**Where est Ricky [Defendant PROVERBS]? We miss him**." The word "est" is French for "is" and was used to mock Plaintiff who frequently spoke French with her husband in the building.

87. Around September 2021, Plaintiff sought to install a security camera in response. However, Defendants refused to allow Plaintiff to do so.

88. Around Fall 2021, Plaintiff's landlord admitted to Plaintiff that Defendant RIBBECKE manipulated Plaintiff's landlord into believing that Plaintiff was being unreasonable and had bad intentions related to Plaintiff's legitimate fears and complaints of sexual harassment. Plaintiff's landlord informed Plaintiff that Defendant RIBBECKE attempted to have Plaintiff's landlord influence Plaintiff to drop this sexual harassment case. After Plaintiff's landlord had a better understanding of this serious matter, Plaintiff's landlord told Plaintiff that RIBBECKE seems toxic and poisonous.

89. Around October 20, 2021, Plaintiff's landlord informed Plaintiff that Plaintiff's landlord would no longer speak to Defendant RIBBECKE about this matter.

90. Plaintiff remains in fear for her life and the safety of her husband.

91. Around August 21, 2021, Plaintiff contacted the Super of Defendants 21 ASTOR PLACE and DOUGLASS ELLIMAN after noticing an empty storage unit to inquire if she could rent the storage unit. The Super informed Plaintiff that tenant, MAXINE LU (hereinafter referred to as "LU") would rent her storage unit to Plaintiff. LU lives next door to Defendant RIBBECKE.

92. Around August 30, 2021, Plaintiff emailed LU asking to rent the storage unit. LU responded and showed interest in renting LU's storage unit to Plaintiff.

93. Around September 2021, after a few email exchanges discussing the monthly rent for Plaintiff to rent the storage unit, LU pretextually told Plaintiff that she was keeping the storage unit for herself. However, LU'S storage unit has remained empty and clearly has not been used by LU.

94. Defendants retaliated against Plaintiff for complaining of Defendant PROVERBS'S sexual harassment.

95. At all times material, Defendant PROVERBS'S comments and conduct were sufficiently offensive, well beyond severe and pervasive, were more than petty slights or trivial inconveniences, specifically as they related to Plaintiff's sex and gender.

96. The above are just some examples of the unlawful discrimination and harassment to which Defendants subjected Plaintiff.

97. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unlawful humiliation, degradation, victimization and embarrassment resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments.

98. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial losses and medical bills.

99. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income and loss of enjoyment of her property.

100.    Plaintiff has also suffered pecuniary losses, physical pain, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

101.    Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

102.    As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

103.    Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER FEDERAL LAW**
**42 U.S.C.A. § 3604 and §3617 FAIR HOUSING ACT**
**(AGAINST ALL DEFENDANTS)**

104. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

105. The Fair Housing Act ("FHA"), 42 U.S.C.A. § 3604, entitled "Discrimination in the sale or rental of housing and other prohibited practices", provides in part: "It shall be unlawful to (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

106. The FHA, 42 U.S.C.A. § 3617, entitled "Interference, coercion, or intimidation", provides in part: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

107. Accordingly, the FHA permits a private right of action for any aggrieved person who is injured by a discriminatory housing practice to bring a claim to recover damages and attorney's fees.

108. Defendants violated both § 3604 and § 3617 because Plaintiff was discriminated against in the provision of services and because Defendants interfered with Plaintiff's enjoyment of a protection under the Fair Housing Act, namely, the right to be free from discrimination, harassment, and retaliation on the basis of her sex/gender.

109. To state an interference claim, Plaintiff must allege: (1) Defendant interfered; (2) with; (a) Plaintiff's exercise of a right under Sections 3603–3606; (b) Plaintiff's enjoyment of a housing right after exercise of that right; or (c) Plaintiff's aid or encouragement to a protected person to exercise or enjoy a housing right; (3) because of discriminatory animus. Lawrence v. Courtyards at Deerwood Ass'n, Inc., 318 F.Supp.2d 1133, 1143–44 (S.D. Fla. 2004) (citations omitted); *see also* Revock v. Cowpet Bay W. Condo. Ass'n, 853 F.3d 96, 112 (3d Cir. 2017) (listing elements for Section 3617 interference claim). Noah v. Assor, 379 F. Supp. 3d 1284, 1289 (S.D. Fla. 2019).

110. Section 3617 "extends only to discriminatory conduct that is so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights." *See* Lawrence, 318 F.Supp.2d at 1144(quoting Gourlay v. Forest Lake Ests. Civic Ass'n of Port Richey, Inc., 276 F. Supp. 2d 1222, 1235 (M.D. Fla. 2003), vacated, No. 8:02CV1955T30TGW, 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003)).

111. Defendants subjected Plaintiff to a hostile housing environment by subjecting her to discrimination and sexual harassment.

112. As outlined by the Department of Housing and Urban Development, "hostile environment harassment" is understood as "unwelcome conduct that is sufficiently severe or pervasive as

to interfere with: [t]he availability, sale, rental, or use or enjoyment of a dwelling; [or] the terms, conditions, or privileges of the sale or rental." *See 24 C.F.R. § 100.600(a)(2)*.

113. Hostile environment harassment "does not require a change in the economic benefits, terms, or conditions of the dwelling," *id*., and it "can be written, verbal, or other conduct, and does not require physical contact," *id*. § 100.600(b). To prove hostile environment harassment, the decision maker must look to the "totality of the circumstances," which includes but is not limited to, "the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved." Id. § 100.600(a)(2)(i)(A).

114. Plaintiff must also allege that Defendants interfered with her exercise of a right under Section 3603-3606. Plaintiff claims that Defendants' conduct interfered with the exercise and enjoyment of her right under the Fair Housing Act to be protected from unlawful discrimination because of her sex and gender.

115. Finally, Plaintiff must allege a factual matter that if true would demonstrate discriminatory animus by the Defendants. Here, Defendant PROVERBS'S, as an employee of Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN, acts of repeated extreme sexual harassment itself creates an inference that the harasser (PROVERBS) harbors a sex/gender discriminatory animus towards Plaintiff because of Plaintiff's sex/gender.

116. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the Fair Housing Act and CFR 100.600.

117. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**
**§ 296(5)(a) HOUSING DISCRIMINATION**
**(AGAINST ALL DEFENDANTS)**

118. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

119. Claims under the federal Fair Housing Act and New York State Human Rights Law, Executive Law § 296 are "evaluated under the same framework." <u>Olsen v. Stark Homes, Inc.</u>, 759 F.3d 140, 153 (2d Cir. 2014) *citing* <u>Mitchell v. Shane</u>, 350 F.3d at 47 n. 4

120. The New York State Human Rights Law Section § 296(5)(a) states in part: "It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof: (1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, age, disability, marital status, status as a victim of domestic violence, lawful source of income or familial status of such person or persons, or to represent that any housing accommodation or land is not available for inspection, sale, rental or lease when in fact it is so available; (2) To discriminate against any person because of race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, age, disability, marital status, lawful source of income or familial status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith."

121. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Human Rights Law, Executive Law § 296.

122. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**<u>FOR DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW</u>**
**<u>§ 296 PUBLIC ACCOMMODATION DISCRIMINATION</u>**

**(AGAINST ALL DEFENDANTS)**

123. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

124. The New York State Human Rights Law, Executive Law § 296 states in part:

> "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of <u>public accommodation</u>, resort or amusement, because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, <u>sex</u>, disability or marital status of any person, <u>directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof</u>, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status, or that the patronage or custom threat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex or marital status, or having a disability <u>is unwelcome, objectionable or not acceptable, desired or solicited.</u>"

125. The New York State Human Rights Law, Executive Law § 292(9) states in part:

> "The term "<u>place of public accommodation, resort or amusement" shall include</u>, regardless of whether the owner or operator of such place is a state or local government entity or a <u>private individual or entity</u>, except as hereinafter specified, <u>all places included in the meaning of such terms as:</u> inns, taverns, road houses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants, or eating houses, or any place where food is sold for consumption on the premises; buffets, saloons, barrooms, or any store, park or enclosure where spirituous or malt liquors are sold; ice cream parlors, confectionaries, soda fountains, and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises; wholesale and retail stores and establishments dealing with goods or services of any kind, dispensaries, clinics, hospitals, bath-houses, swimming pools, laundries and all other cleaning establishments, barber shops, beauty parlors, theatres, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, trailer camps, resort camps, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiard and pool parlors; garages, all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus; <u>public halls, public rooms, public elevators, and any public areas of any building or structure.</u>"

126. The lobby, stairwell, public rooms, public areas, public hallways, and non-habitable areas of the building located at 21 Astor Place, New York, New York 10007 are public accommodations under New York State law.

127. Plaintiff was located in these public areas, specifically in the lobby area when Defendant PROVERBS repeated sexually harassed her. Specifically, from early May 2021 through late June 2021, between around three (3) to six (6) ties per week, Defendant PROVERBS commented to Plaintiff, **damn, you're fit, look at that body.** Additionally, from around late May 2021 through around late June 2021, in the lobby area, around a dozen times per week, Defendant PROVERBS repeatedly asked Plaintiff to go to Plaintiff's apartment.

128. Defendants denied Plaintiff the use and enjoyment of this public place of accommodation.

129. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Human Rights Law, Executive Law § 296.

130. Accordingly, Defendants violated NYSHRL Exec § 296 described above and Plaintiff suffered numerous damages as a result of said violation.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

131. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

132. New York State Human Rights Law, Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

133. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff on the basis of Plaintiff's sex/gender and age, along with sexual harassment and because of Plaintiff's opposition to the unlawful practices of Defendants.

134. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

135. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

136. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

137. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

138. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

139. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
## N.Y.C. ADMIN. CODE § 8-107 5(a) HOUSING DISCRIMINATION
## (AGAINST ALL DEFENDANTS)

140. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

141. The New York City Administrative Code Title 8, §8-107(5)(a) states in part: "It shall be an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or

lease of a housing accommodation, constructed or to be constructed, or an interest therein, or any agency or employee thereof: (1) Because of the actual or perceived race, creed, color, national origin, gender, age, disability, sexual orientation, marital status, partnership status, or alienage or citizenship status of any person or group of persons, or because of any lawful source of income of such person or persons, or because children are, may be or would be residing with such person or persons: (a) To refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation or an interest therein; (b) To discriminate against any such person or persons in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith; (c) To represent to such person or persons that any housing accommodation or an interest therein is not available for inspection, sale, rental or lease when in fact it is available to such person."

142. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title discriminating against the Plaintiff because of Plaintiff's sex and gender.

143. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8 and any and all laws under which she is protected as a tenant from discrimination, harassment, and retaliation because of her sex and gender.

144. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW**
**§ 8-107 4(a) PUBLIC ACCOMMODATION**
**(AGAINST ALL DEFENDANTS)**

145. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

146. The New York City Administrative Code Title 8, §8-107(4)(a)(1) states in part: "Public accommodations. a. It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: Because of any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status, directly or indirectly: (a) To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation; or (b) To represent to any person that any accommodation, advantage, facility or privilege of any such place or provider of public accommodation is not available when in fact it is available"

147. The New York City Administrative Code Title 8, §8-107(4)(a)(2) states in part: "Public accommodations. a. It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: Directly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement to the effect that: (b) The patronage or custom of any person is unwelcome, objectionable, not acceptable, undesired or unsolicited because of such person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status."

148. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title discriminating against the Plaintiff because of Plaintiff's sex and gender.

149. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8 and any and all laws under which she is protected from discrimination, harassment, and retaliation because of her sex and gender.

150. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN EIGHTH CAUSE OF ACTION
### FOR RETALIATION UNDER NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

151. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

152. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . opposed any practices forbidden under this chapter. . . "

153. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

154. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A NINTH CAUSE OF ACTION
### FOR AIDING AND ABETTING
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

155. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

156. The New York City Administrative Code Title 8, 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

157. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

**AS A TENTH CAUSE OF ACTION**
**FOR INTERFERENCE**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

158. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

159. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

160. Defendants violated the section cited herein as set forth.

161. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN ELEVENTH CAUSE OF ACTION**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST DEFENDANT PROVERBS)**

162. Plaintiff repeats and re-alleges each and every allegation made in the complaint as if they were set forth herein fully at length.

163. Defendant PROVERBS'S behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

164. Defendant PROVERBS'S conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

165. Defendant PROVERBS caused Plaintiff to fear for Plaintiff's own safety.

166. Defendant PROVERBS'S breach of his duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

167. As a result of Defendant PROVERBS'S acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A TWELFTH CAUSE OF ACTION
## FOR NEGLIGENCE
## HIRING, SUPERVISION, RETENTION
## (AGAINST DEFENDANTS 21 ASTOR PLACE AND DOUGLAS ELLIMAN)

168. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

169. Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN owed Plaintiff a legal duty of care.

170. Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN placed their employees in a position to cause foreseeable harm which the Plaintiff would have been spared had Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN taken reasonable care in hiring, supervising, or retaining the employee.

171. Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN knew or should have known of PROVERBS'S propensity for the conduct that caused the injury.

172. But-for the Defendants' 21 ASTOR PLACE and DOUGLAS ELLIMAN breach of duty owed to Plaintiff, and Plaintiff's detrimental reliance thereon, Plaintiff would not have suffered the harm alleged herein.

173. Defendants 21 ASTOR PLACE and DOUGLAS ELLIMAN were negligent in the hiring, training, supervision and retention of said employee.

174. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer emotional distress, mental anguish, and other damages for which they are entitled to compensatory, equitable and other lawfully available relief in an amount to be proven at trial.

   **WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, attorney's fees, costs, interest and all other damages as well as costs and disbursements of this action as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Date:  July 13, 2022
       New York, New York

                                        Respectfully Submitted,
                                        **DEREK SMITH LAW GROUP, PLLC.**
                                        *Attorneys for Plaintiff*

                              BY:  ____/s/ Johnmack Cohen
                                   Johnmack Cohen, Esq.
                                   1 Pennsylvania Plaza, Suite 4905
                                   New York, New York 10119
                                   (212) 587-0760